UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **Flexuspine, Inc.** | § | |
| | § | |
| v. | § | CASE NO. 6:15-cv-201-JRG-KNM |
| | § | |
| **Globus Medical, Inc.** | § | JURY TRIAL DEMANDED |

**REPORT AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant Globus Medical, Inc.'s ("Globus") Motion for Summary Judgment (Doc. No. 107) ("Mot."). Plaintiff Flexuspine, Inc. ("Flexuspine") filed a response in opposition (Doc. No. 113) ("Resp."), Globus filed a reply (Doc. No. 123) ("Reply"), and Flexuspine filed a sur-reply (Doc. No. 127) ("Sur-reply"). Additionally, the parties submitted supplemental briefing on Globus's motion for summary judgment of no willful infringement after the Supreme Court's *Halo* decision (Doc. Nos. 137, 138, 139). The Court conducted a hearing on the motion on June 21, 2016. For the reasons set forth below, the Court recommends Globus's Motion (Doc. No. 107) be **GRANTED-IN-PART** and **DENIED-IN-PART**.

**BACKGROUND**

At this stage, Flexuspine accuses Globus of infringing three patents: U.S. Patent No 7,204,853 ("the '853 Patent"); U.S. Patent No. 7,316,714 ("the '714 Patent"); and 8,123,810 ("the '810 Patent"). The asserted patents relate to expandable intervertebral implants. Flexuspine accuses Globus's Caliber and Caliber-L (collectively, "Caliber") implants of infringing Claim 1 of the '853 Patent and Claim 17 of the '810 Patent. Flexuspine accuses Globus's Altera implant of infringing Claims 1 and 2 of the '714 Patent.

**APPLICABLE LAW**

**I.  Summary Judgment**

The Court may only grant a motion for summary judgment when there is no genuine dispute of material fact and the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a).  A genuine dispute as to material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "material fact" is one that might affect the outcome of the suit under governing law.  *Id.*  The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

The moving party, however, "need not negate the elements of the non-movant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (en banc).  The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case.  *Stults v. Connoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).  Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial.  *Id.*  All facts and inferences are viewed "in the light most favorable to the nonmoving party."  *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).  "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Id.*

## II. Anticipation

Pursuant to 35 U.S.C. § 102(b), "[a] person shall be entitled to a patent . . . unless the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." Patents are presumed to be valid. 35 U.S.C. § 282. "Because patents are presumed valid, anticipation must be proven by clear and convincing evidence." *Ericsson, Inc. v. D-Link Sys.*, Inc., 773 F.3d 1201, 1223 (Fed. Cir. 2014) (citations omitted). To invalidate patent claims based on prior art, the challenger to the patent must show by clear and convincing evidence that the earlier invention is prior art under § 102 and the earlier invention includes all elements of the claims at issue. *Netscape Communications Corp. v. Konrad*, 295 F.3d 1315, 1320 (Fed. Cir. 2002). Whether a prior art reference is anticipating is a question of fact. *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 20 (Fed. Cir. 2000).

## III. Infringement

Pursuant to 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patent invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." Infringement analysis is a two-step process, in which a district court first determines the claim scope through claim construction, and then compares the claim to the accused device. *See Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999). Infringement is a question of fact, which the patentee must prove by a preponderance of the evidence. *Siemens Med. Sols. USA, Inc. v. Saint-Goban Ceramics & Plastics, Inc.*, 637 F.3d 1268, 1279 (Fed. Cir. 2011).

Infringement may be literal or by equivalence. "To prove literal infringement, the patentee must show that the accused device contains each and every limitation of the asserted claim." *Ericsson, Inc.*, 773 F.3d at 1215. Infringement through the doctrine of equivalents

3

requires the patentee to demonstrate "differences between the claimed invention and the accused product or method are insubstantial or that the accused product or method performs substantially the same function in substantially the same way with substantially the same result as each limitation" of the asserted claim. *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1326 (Fed. Cir. 2007).

## IV. Willful Infringement

Pursuant to 35 U.S.C. § 284, a court may enhance a party's damages award "up to three times the amount found or assessed." Previously, the Federal Circuit had held "that an award of enhanced damages requires a showing of willful infringement." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (en banc). Under *Seagate*, to prevail on a willfulness claim, the patentee had to demonstrate a "threshold objective standard" that the accused infringer "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id*. If the patentee established the objective prong, then it next must show the risk of infringement was "known or so obvious that it should have been known to the accused infringer." *Id.*

The Supreme Court found the Federal Circuit's two-part test from *Seagate* "unduly rigid" and inconsistent with § 284. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, No. 14-1513, 2016 WL 3221515, 579 U.S. __ (June 13, 2016). Because § 284 commits the award of enhanced damages to the discretion of the district court, the Court rejected *Seagate*'s threshold requirement that there must be a finding of objective recklessness in every case as "impermissibly encumber[ing]" that discretion. *Id.* at *8. Enhanced damages should be limited to "egregious cases of misconduct beyond typical infringement." *Id.* at *11. The patentee must demonstrate willfulness by a preponderance of the evidence. *Id.* at *9.

## ANALYSIS

Globus moves for summary judgment of noninfringement and anticipation of the four asserted claims across the '853, '714, and '810 Patents. Globus additionally moves for summary judgment of no willful infringement.

**I.     The '853 Patent**

Claim 1 of the '853 Patent discloses an intervertebral implant for the human spine comprising an upper body, a lower body, an insert, and an expansion member. The parties' arguments with respect to summary judgment of both anticipation and noninfringement center on the two aspects of the "expansion member" limitation: (1) "an expansion member configured to elevate the insert to increase a separation distance between the upper body and the lower body after insertion of the intervertebral implant in the human spine" ("configured to elevate limitation"); and (2) "wherein a portion of the superior surface of the lower body is configured to inhibit backout of the expansion member from the intervertebral implant" ("configured to inhibit backout limitation").

**A.     Summary Judgment of Anticipation**

Globus moves for summary judgment that Claim 1 of the '853 Patent is invalid as anticipated by U.S. Patent No. 5,782,832 to Larsen ("Larsen").[1] Mot. at 17. Larsen issued on July 21, 1998 and is prior art to the '853 Patent, which Flexuspine does not contest. Mot. Ex. 15; *see also* Resp. at 19–22. The parties dispute whether Larsen teaches or suggests "a portion of the superior surface of the lower body is configured to inhibit backout of the expansion member from the intervertebral implant" as required by the asserted claim. *See* Resp. at 19.

---

[1]     In its petition for IPR of the '853 Patent's Claim 1, Globus raised Larsen in combination with U.S. Patent No. 6,491,724 ("Ferree") to argue obviousness. Resp. Ex. 12 at 24. Globus relied on Ferree to each the "configured to inhibit backout" limitation. *Id.* The PTAB denied institution of IPR proceedings for this claim. Resp. Ex. 13 at 12–15.

5

Globus relies on Figures 22 through 24 of Larsen as anticipatory, arguing Larsen's threaded bore inhibits backout of the expansion member, and that the threaded bore is a portion of the superior surface of the lower body. Mot. at 20; Reply at 6. Flexuspine responds that "the threads of the set screw within a threaded bore" in Larsen are not "a portion of the superior surface of the lower body" configured to inhibit backout as required by the asserted claim. Resp. at 21 (citing Resp. Ex. 2 ¶ 63–64).

Globus has failed to demonstrate the lack of a genuine dispute of material fact regarding whether Larsen teaches all of the elements of the asserted claim. A material fact dispute remains regarding whether Larsen's threaded bore teaches or suggests "a portion of the superior surface of the lower body . . . configured to inhibit backout." Flexuspine presented evidence through Dr. Oxland's testimony that Larsen does not teach or suggest this element. Whether Larsen's threaded bore anticipates the configured to inhibit backout limitation of the '853 Patent will be resolved by the trier of fact. Because Globus has not shown that Claim 1 of the '853 Patent is invalid by clear and convincing evidence, the Court recommends **DENYING** summary judgment of anticipation of the '853 Patent's Claim 1.

### B. Summary Judgment of Noninfringement

Globus moves for summary judgment that its Caliber products do not infringe Claim 1 of the '853 Patent. Mot. at 4. Globus asserts that Flexuspine has failed to show the Caliber products meet two limitations: the (1) configured to elevate the insert element, and (2) the configured to inhibit backout limitation. *Id.*

#### 1. *Configured to elevate the insert*

First, the asserted claim requires "an expansion member configured to elevate the insert to increase a separation distance between the upper body and the lower body after insertion of

6

the intervertebral implant in the human spine." '853 Patent 13:1–7. In claim construction, after noting the parties agreed that the plain and ordinary meaning of "elevate" means to "raise or lift," the Court rejected Globus's argument that the insert must be elevated above the expansion member, noting the claims do not require the expansion member as a point of reference. Doc. No. 74 at 12. The Court then gave "configured to elevate the insert" its plain and ordinary meaning. *Id.* at 15.

Globus argues Caliber's expansion member does not elevate the insert, because the expansion member pushes the insert forward, rather than upward. Mot. at 4–5. Globus maintains that the insert does not move toward either end plate; instead, it stays on the same plane. *Id.*

According to Flexuspine, if Caliber is placed on a stiff surface, the lower body remains stationary and the insert is elevated toward the upper body. Resp. at 5; Sur-Reply at 2–3 (citing Doc. No. 113-2 ¶¶ 53–55; Doc. No. 113-4 at 178:315, 179:6–13). Flexuspine provides testimony from its infringement expert Dr. Oxland that "[w]here the relative stiffness of the spine above and below the intervertebral space differs, the insert will move superiorly or inferiorly from its original position in the direction having a lower stiffness." Oxland Report (Doc. No. 113-2) ¶ 55. Flexuspine, through this expert testimony, submits that:

> In virtually all cases, the effective stiffness in the superior direction . . . will be different from the effective stiffness in the inferior direction. . . . This difference is due to deformation of the vertebral endplates (Brinckmann 1983), the inherent variations in the stiffness of the adjacent superior and inferior vertebral endplates (Grant 2001), and differences in the number and degree of degeneration in intervertebral discs superior and inferior to the operated intervertebral space (Hirsch and Nachemson 1954, Hansson 1987).

*Id.* ¶ 54.

Globus has failed to establish the absence of a genuine dispute of material fact regarding whether Caliber infringes the asserted claim. Whether Caliber's insert meets the "configured to elevate the insert" limitation raises a material dispute of fact that turns on expert testimony. Viewing the evidence in the light most favorable to the nonmovant, Flexuspine's infringement theory survives summary judgment. Flexuspine's expert opines "the insert will move superiorly or inferiorly from its original position in the direction having lower stiffness." Oxland Rep. ¶ 55. "As a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case." *Vasudevan Software, Inc. v. Microstrategy, Inc.*, 782 F.3d 671, 683 (Fed. Cir. 2015).

2. *Configured to inhibit backout*

Next, the asserted claim requires that "a portion of the superior surface of the lower body is configured to inhibit backout of the expansion member form the intervertebral implant." '853 Patent 17:29–32. During claim construction, the Court rejected Globus's proposed limitation that "any and all" backout must be inhibited, and having resolved the parties' dispute, ruled that no construction was necessary. Doc. No. 74 at 17.

Globus argues that Caliber's lower body plays no role in inhibiting backout, because it never directly contacts the set screw. Mot. at 7. Globus contends that Caliber inhibits backout via a different mechanism, by which flanges on the set screw mate with a semi-circular groove on the actuator. *Id.* at 9–10. Globus maintains that Flexuspine's infringement theory of indirectly inhibiting backout conflicts with the embodiments of the '853 Patent, and was disclaimed during IPR. *Id.* at 8.

Flexuspine agrees that in Caliber, flanges on the set screw mate with the actuator (insert), contending they are then "locked together" and "move as a single unit." Resp. at 9; Sur-Reply at

8

4 (citing Oxland Rep. ¶ 64). Flexuspine argues the insert's flanges extend into grooves in a trunk portion of the lower body. Oxland Rep. ¶ 64. Flexuspine's expert opines that "[t]he angle and friction between the flanges of the ramped portion of the insert (actuator) and the grooves in the lateral sides of the trunk of the lower body provide resistance to backward movement of the insert, which in turn inhibits the forces exerted on the expansion member (set screw) that would tend to cause the expansion member to backout from the implant." Oxland Rep. ¶ 65.

Flexuspine has thereby offered evidence that the Caliber expansion member is configured to inhibit backout through testimony of its expert Dr. Oxland, and a video of Caliber's operation. *See* Oxland Rep. ¶¶ 64–65; Resp. Ex. 9. Globus contends Caliber does not meet the backout limitation by arguing the claim requires direct contact between the expansion member and the lower body. Globus effectively asks the Court to further construe this claim element, and import a limitation that the expansion member must directly contact the lower body. *See* Mot. at 8–9 (relying on the '853 Patent 9:37–51; 10:33–35; Figures 6b–d, 12b–3 as well as Flexuspine's statements during IPR). The particular embodiments of the '853 Patent to which Globus cites do not, without more, limit the claims. Nor do Flexuspine's statements during IPR constitute an unambiguous disclaimer of an indirect mechanism for inhibiting backout. *See* Mot. Ex. 9 at 19–20 (distinguishing a prior art reference which the petitioner argued inhibited backout through friction).

A material fact dispute remains, therefore, regarding whether Caliber infringes the "configured to inhibit backout" limitation. Because there is evidence from which a reasonable jury could find that Caliber satisfies the inhibit backout limitation of the asserted claim, summary judgment is inappropriate. Accordingly, the Court recommends that Globus's motion for summary judgment of noninfringement with respect to the '853 Patent Claim 1 be **DENIED**.

9

## II. The '714 Patent

Flexuspine asserts independent Claim 1 and dependent Claim 2 of the '714 Patent against Globus's Altera implant. Claim 1 of the '714 patent discloses an intervertebral implant for a human spine comprising an upper body, a lower body, an insert, an expansion member, and a set screw.

### A. Summary Judgment of Anticipation

Globus moves for summary judgment that Claims 1 and 2 of the '714 Patent are invalid as anticipated by U.S. Patent No. 6,176,882 to Biedermann ("Biedermann"). Mot. at 21. Biedermann was published on January 23, 2001, and is therefore prior art to the '714 Patent, which Flexuspine does not dispute. *See* Mot. Ex. 17. The parties dispute whether Biedermann teaches or suggests two claim limitations of the '714 Patent's Claim 1, from which Claim 2 depends: (1) "a set screw configured to be rotated to advance the expansion member to engage the insert"; and (2) "increasing the separation distance between the upper and lower body allows articulation or increased articulation of the intervertebral implant." *See* Resp. at 26–28. During claim construction, the Court accepted the parties' agreed construction that "articulation" means "rotational motion or increased rotational motion about at least one axis between the upper and lower bodies." Doc. No. 74 at 5.

For the set screw limitation, Globus relies on the "bearing members" disclosed in Biedermann. *See* Peloza Invalidity Report (Doc. No. 103-5) ¶ 143 (citing Biedermann at 3:27–31). Flexuspine responds that "bearing members" are not literally "set screws," because they are "drive nuts," and therefore Biedermann does not anticipate the asserted claim. Resp. at 28; *see also* Rebuttal Report of Dr. Oxland ¶ 148 (Doc. No. 113-3) (Resp. Ex. 2) ("[T]he bearing

10

members are not screws but actually drive nuts."); Oxland Deposition (Doc. No. 107-9) (Mot. Ex 8) at 68:9–15.

With respect to the articulation limitation, Globus relies on Figures 9 and 10 of Biedermann, which it alleges depict "engagement members" (the upper and lower bodies) "rotated about their respective central axes, represented by pins 70 and 71" after expansion (Figure 10) compared to before expansion (Figure 9). Mot. at 22–23 (citing Peloza Invalidity Report (Mot. Ex. 16) at ¶¶ 144–146). Flexuspine responds that this does not anticipate because Biedermann only teaches rotation during expansion, but does not teach allowing for rotation after expansion, which it maintains is required by the claims pursuant to the parties' agreement. Resp. at 26 (citing Doc. No. 51 at 13; Resp. Ex. 2 at ¶ 150; Resp. Ex. 4 at ¶ 81).

Viewed in the light most favorable to the nonmovant, Flexuspine's evidence at a minimum creates a material fact dispute regarding whether a bearing member anticipates a set screw. Flexuspine provides testimony of its expert to support its position that a drive nut is not literally a set screw. *See* Rebuttal Report of Dr. Oxland ¶ 148 (Doc. No. 113-3) (Resp. Ex. 2) ("[T]he bearing members are not screws but actually drive nuts."); Oxland Deposition (Doc. No. 107-9) (Mot. Ex 8) at 68:9–15. Globus has not shown that Claims 1 and 2 of the '714 Patent are invalid by clear and convincing evidence as a matter of law. Therefore, the Court recommends that Globus's motion for summary judgment of anticipation of the asserted '714 Patent claims be **DENIED**.

### B. Summary Judgment of Noninfringement

Flexuspine accuses Globus's Altera implant of infringing Claims 1 and 2 of the '714 Patent. Globus seeks summary judgment of noninfringement on grounds that Altera does not meet the articulation limitation of independent Claim 1, from which Claim 2 depends. The

11

articulation limitation requires "wherein the intervertebral implant is configured such that increasing the separation distance between the upper body and the lower body allows articulation or increased articulation of the intervertebral implant." '714 Patent 13:46–49. During claim construction, the Court accepted the parties' agreed construction that "articulation" means "rotational motion or increased rotational motion about at least one axis between the upper and lower bodies." Doc. No. 74 at 5.

Globus argues that Altera does not meet the articulation limitation because it was not "designed to" rotate after expansion, even if it may be "capable of" rotation after expansion. Mot. at 14–15. Globus argues that the "configured to" language in the patent means the implant must be "designed to" perform the limitations. *Id.* Flexuspine argues Dr. Oxland's tests demonstrate that Altera does in fact rotate. Resp. at 16–17 (citing Resp. Ex. 1 at ¶¶ 96–97). Flexuspine responds that the "intention behind the design" is "of no legal significance" to "direct infringement of an apparatus claim when there is evidence that the Altera is not just capable of rotating, but actually does rotate when used in practice." *Id.* at 18 (citing *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1527 (Fed. Cir. 1995) (en banc) ("Infringement is, and should remain, a strict liability offense.")

Globus has not demonstrated a lack of genuine dispute of material fact with respect to infringement of the asserted claim. Flexuspine submits some evidence, through the testing performed by and testimony of its liability expert Dr. Oxland, that the Altera implant may meet the articulation limitation. *See* Resp. Ex 1 ¶¶ 96–100 & Exhibit D attached thereto. Globus's arguments go to the weight to be assigned to Dr. Oxland's testing and results, which is the role of the trier of fact. Further, Globus attempts to limit the claims to what Altera is "designed to" do, without providing adequate support in the intrinsic record to support this reading of the claims.

Globus fails to establish the Altera implant does not meet the articulation limitation as a matter of law.

The parties agree that the accused Altera implant contains a drive nut. Oxland Report (Doc. No. 113-2) (Resp. Ex. 1) ¶¶ 90–91. At the hearing, Flexuspine represented Dr. Oxland does not opine Altera's drive nut literally infringes a set screw. Hearing Recording at 11:16a.m. ("Dr. Oxland's infringement report ¶ 91 . . . does not say [this feature] is literally met. He does an equivalents analysis."); *see also id.* at 11:18a.m. ("[H]e says literal infringement every time he opines to literal infringement, he does not do that with respect to this element."). Flexuspine stated on the record it will not be making a literal infringement argument with respect to the set screw element. *Id.* at 11:18–11:19a.m. (Judge: "So are we getting on the record that he is not going to make a literal infringement argument?" Flexuspine: "On that specific element, no he is not."). "To prove literal infringement, the patentee must show that the accused device contains each and every limitation of the asserted claim." *Ericsson, Inc.*, 773 F.3d at 1215.

However, genuine disputes of material fact remain regarding whether Altera's drive nut satisfies the set screw limitation under the doctrine of equivalents. Flexuspine presents evidence of its doctrine of equivalents theory through expert testimony. *See* Mot. Ex 7 ¶ 91 ("To the extent a drive nut and set screw are deemed different, the Altera infringes this element under the Doctrine of Equivalents because to the extent there are any differences between the Altera and this claim, such differences are insubstantial."); Mot. Ex. 8 at 68:13–15 ("[L]iterally a drive nut is not a set screw, but they can be used to accomplish the same task."). Globus does not move for summary judgment of noninfringement of the '714 Patent under the doctrine of equivalents theory of infringement. *See* Mot. at 14–17. A genuine dispute of material fact remains regarding whether Altera's drive nut performs substantially the same function in substantially the same

13

way to achieve substantially the same result as the set screw required by the asserted claim. Flexuspine's doctrine of equivalents infringement theory therefore survives summary judgment and may be considered by the jury.

The Court therefore recommends **DENYING** summary judgment of noninfringement with respect to the asserted claims of the '714 Patent.

### III. The '810 Patent

Flexuspine asserts Claim 17 of the '810 Patent against Globus's Caliber implants. The dispute with respect to both summary judgment of anticipation and noninfringement centers on the "oblique" claim limitation, which provides in relevant part:

> wherein the expansion member is configured to be positioned between the upper body and the lower body such that applying a force to a trailing end of the elongated body is configured to advance the first angled portion and the substantially flat superior and inferior surfaces of the expansion member in a substantially linear direction between and at least partially oblique to at least a portion of the inferior surface of the upper body and at least a portion of the superior surface of the lower body after insertion of the upper and lower body in the spine . . . .

'810 Patent 36:16–27.

In claim construction, the Court accepted the parties' agreed construction that no construction was necessary for this term. Doc. No. 74 at 5. During claim construction, the parties agreed that: (1) "the expansion member's movement must be oblique (in a slanting or sloping direction) to the surfaces of the upper and lower bodies"; and (2) "both the 'first angled portion' and flat surfaces of the expansion member must move obliquely with respect to the same portion of the surface of the upper and lower bodies." Doc. No. 51 at 19–20; Doc. No. 52 at 10; Doc. No. 56-2 at 14. Both parties adopt this agreement in their briefing on summary

judgment. Mot. at 11; Resp. at 13. During claim construction, Globus argued as it does now that Claim 17 is indefinite absent the parties' agreement. Doc. No. 51 at 19–20; Mot. at 11.[2]

### A. Summary Judgment of Anticipation

Globus moves for summary judgment that Claim 17 of the '810 Patent is invalid as anticipated by U.S. Patent No. 7,828,849 ("Lim"). Mot. at 24. Lim was filed on January 22, 2004, is based on a provisional application filed on February 3, 2003, and is therefore prior art to the '810 Patent, which Flexuspine does not dispute. See Mot. Ex. 18. The parties dispute whether Lim teaches or suggests a specific element of the expansion member limitation: "configured to advance the first angled portion and the substantially flat superior and inferior surfaces of the expansion member in a substantially linear direction **between and at least partially oblique to** . . . **at least a portion of the superior surface of the lower body**."

Relying on Figures 18 and 19 of Lim, Globus asserts Lim discloses oblique movement of the expansion member to the lower body because the "expansion member travels along a curved path." Mot. at 26. Globus contends this curved path constitutes oblique movement (or movement at an angle) to at least one portion of the superior surface of the lower body. *Id.* (citing Peloza Invalidity (Report Doc. No. 107-17) (Mot. Ex. 16) at ¶ 209).

Flexuspine responds that the limitation in dispute is not disclosed because the expansion member travels along a flat horizontal plane with respect to the lower body. Resp. at 24–25; Resp. Ex. 2 ¶¶ 209–211. Specifically, Flexuspine's expert opines that the expansion member "is not itself raised" relative to the lower body, and "does not move at an oblique angle relative to both the first and second members." Oxland Rebuttal Report (Resp. Ex. 2) ¶ 209. Instead, the

---

[2] The PTAB denied institution of IPR for Claim 17 of the '810 Patent, noting that "neither party's interpretation of the oblique term accords with the intrinsic evidence" and that it "discern[ed] no other construction of the term that would be consistent with the intrinsic record." *See* Doc. No. 107-12 (Mot. Ex. 11) at 14.

lower body and expansion member "only slide horizontally with respect to each other." *Id.* ¶ 210. Responding to Dr. Peloza's theory, Dr. Oxland opines, "[t]here is no rear angled portion on the inner surface of [the lower body] of Lim . . . . [T]he inner surface of the [lower body] is flat, as is the lower surface of the" expansion member. *Id.* ¶ 210.

Viewing the evidence offered by the parties in the light most favorable to Flexuspine, Globus has failed to demonstrate the lack of a genuine dispute of material fact as to whether or not the Lim reference anticipates all of the limitations of the claim. For example, a material factual dispute remains regarding whether Lim teaches oblique movement of the expansion member to a portion of the lower body. Therefore, the Court recommends **DENYING** Globus's motion for summary judgment that Claim 17 of the '810 Patent is anticipated.

### B. Summary Judgment of Noninfringement

Globus moves for summary judgment of noninfringement of Claim 17 of the '810 Patent, alleging its accused Caliber products do not meet two aspects of the "oblique" claim limitation. First, Globus argues Caliber's expansion member (actuator) does not move in a "slanting or sloping direction" with respect to the upper and lower bodies, because it moves only horizontally between them. Mot. at 11. Second, Globus asserts that the first angled portion and the flat surfaces of the expansion member do not move obliquely to the *same* part of the superior and inferior surfaces of the upper and lower bodies. *Id.* at 12.

First, Flexuspine responds that the expansion member moves in a substantially linear direction and "horizontal movement of the expansion member is translated into vertical movement of the upper and lower bodies through use of inclined ramps." Resp. at 14. According to Flexuspine, the "horizontal movement (X)" of the expansion member combined with the "vertical movement (Y)" of the upper and lower bodies "results in an oblique angle (X,

Y)." *Id.* Flexuspine's expert opines that the expansion member slides along ramps of the upper and lower bodies, which "causes the first angled portion and the superior and inferior surfaces of the elongated body to move in an oblique direction to both of the upper and lower bodies along at least a path of travel." Oxland Report (Doc. No. 113-2) (Resp. Ex. 1) at ¶ 125.

Flexuspine has not presented evidence establishing a genuine dispute of material fact that "the expansion member's movement must be oblique (in a slanting or sloping direction) to the surfaces of the upper and lower bodies." Flexuspine infringement theory creates a slanting hypotenuse between the horizontal movement of the expansion member and the vertical movement of the upper and lower bodies. This fails to meet the requirement that the movement ***of the expansion member*** must be oblique. Viewed in the most favorable light, Flexuspine's evidence demonstrates the expansion member's movement is only substantially linear,[3] and not in a slanting or sloping direction with respect to the upper and lower bodies.

Furthermore, only horizontal movement of the expansion member runs afoul of the second requirement of the parties' agreed construction: that ***both*** the first angled portion and the flat surfaces of the expansion member move obliquely to the ***same*** part of the superior and inferior surfaces of the upper and lower bodies. Globus's expert opines that regardless of whether the point of reference is placed on the ramped surface or the flat surface of Caliber's upper or lower bodies, either the first angled portion or the flat surface of the expansion member will move parallel, rather than in a slanting or sloping direction, to the ramp or flat surface of the body. *See* Peloza Expert Report (Doc. No. 113-5) (Resp. Ex. 4) ¶ 103. Flexuspine provides no

---

[3] Unlike the insert in the "configured to elevate the insert" element in the '853 Patent, here, Flexuspine offers no evidence that the expansion member other than substantially linear manner. With respect to the "configured to elevate the insert" limitation of the '853 Patent, Flexuspine offered some evidence that created a genuine dispute of material fact that the implant's insert would be elevated, *i.e.*, raised or lifted. *See* Oxland Report (Doc. No. 113-2) ¶ 55 (opining "the insert will move superiorly or inferiorly from its original position in the direction having lower stiffness"). Here, on the other hand, Flexuspine offers no evidence of oblique movement *of the expansion member* for the record.

evidence to satisfy this requirement. *See* Oxland Report (Doc. No. 113-2) (Resp. Ex. 1) ¶¶ 119–125; Oxland Deposition (Doc. No. 113-4) (Resp. Ex. 3) at 172:2–16. Even further, Flexuspine's expert does not mention this requirement in his infringement analysis at all. *See id.* Oxland Expert Report (Doc. No. 113-2) (Resp. Ex. 1) ¶¶ 119–125; Oxland Deposition (Doc. No. 113-4) (Resp. Ex. 3) at 172:2–16 (describing only the movement of, or a point of reference on, the expansion member as a whole). Absent such evidence, a reasonable juror could not find Caliber infringes the asserted claim.

Viewed in the light most favorable to Flexuspine, Caliber does not fall within any common sense reading of the "oblique" claim limitation. Accordingly, the Court recommends **GRANTING** summary judgment of noninfringement in favor of Globus.

## IV. Summary Judgment of No Willful Infringement

Globus moves for summary judgment of no willful infringement. The focus of Globus's original motion, filed before the Supreme Court's *Halo* decision, was that Flexuspine did not meet the objective prong of *Seagate*. Mot. at 27–28. In post-*Halo* supplemental briefing, Globus argues that the record does not support a finding of egregious conduct. Doc. No. 138. Flexuspine responds that Globus acknowledges it was aware of Flexuspine's patents, and was aware of Flexuspine's infringement analysis of at least one patent. Resp. at 29.

Drawing all reasonable inferences in the light most favorable to Flexuspine, Globus has failed to demonstrate there is no genuine dispute of material fact regarding the egregiousness of its conduct. Although the court will ultimately decide whether enhanced damages are appropriate, the trier of fact will evaluate whether Globus's conduct constituted willful

infringement.[4]  Accordingly, the Court recommends that Globus's motion for summary judgment of no willful infringement be **DENIED**.

### RECOMMENDATION

For the reasons set forth herein, the Court recommends that Globus's Motion for Summary Judgment (Doc. No. 107) be **GRANTED** with respect to noninfringement of the '810 Patent, and **DENIED** in all other respects.

Within fourteen days after receipt of the Magistrate Judge's report, any party may serve and file written objections to the findings and recommendations of the Magistrate Judge. 28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report shall bar that party from de novo review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assn.*,

---

[4] Neither party appears to dispute that a court may properly submit the question of willfulness to the jury after *Halo*. *See* Doc. No. 137 ("This should leave undisturbed that the issue of willful infringement is submitted to the jury . . . ."); Doc. No. 138 (disputing that there is a triable issue of fact that warrants submitting willfulness to the jury in this case, but not disputing submission of willfulness to the jury in general). Furthermore, this Court has noted that after *Halo*, the question of subjective willfulness remains a factual inquiry reserved for the jury. *TransData, Inc. v. Denton Municipal Elec.*, Case No. 6:10-cv-557-RWS-JDL, at *4 (E.D. Tex. June 29, 2016) (agreeing with *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, Case No. 3:14-cv-2061, Doc. No. 368 at 27 (S.D. Cal June 17, 2016), which noted subjective willfulness is traditionally a question of fact, and nothing in the *Halo* decision expressly ruled otherwise).

79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 7th day of July, 2016.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE