# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **Flexuspine, Inc.** | § | |
| | § | |
| v. | § | CASE NO. 6:15-cv-201-JRG-KNM |
| | § | |
| **Globus Medical, Inc.** | § | JURY TRIAL DEMANDED |

## ORDER

Before the Court is Plaintiff Flexuspine Inc.'s ("Flexuspine") Motion to Strike Portions of Defendant's Amended Expert Report of Daniel L. Jackson and Supplemental Expert Report of Dr. John Peloza (Doc. No. 178) ("Mot."). Defendant Globus Medical, Inc. ("Globus") filed a response in opposition (Doc. No. 189) ("Resp."), and Flexuspine filed a Reply (Doc. No. 194). ("Reply"). The parties completed this briefing on August 8, 2016, and the Court heard oral argument on the motion on August 10, 2016. Having considered the parties' arguments, the expert reports at issue, and the applicable law, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Flexuspine's Motion (Doc. No. 178).

## BACKGROUND

Globus relies on Dr. John Peloza as its noninfringement and invalidity expert, and Mr. Daniel L. Jackson as its damages expert. Flexuspine relies on Dr. Stephen L. Becker as its damages expert. On July 6, 2016, the Court issued *Daubert* rulings with respect to each side's expert reports, and granted leave to amend. *See* Doc. Nos. 144, 145, 146. Now in the present motion, Flexuspine challenges targeted portions of the amended reports.

## APPLICABLE LAW

Pursuant to Federal Rule of Civil Procedure 26(a), a party must disclose its expert opinions "at the times and in the sequence that the court orders." FED. R. CIV. P. 26(a)(2)(D). "If

1

a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). A district court considers four factors in evaluating whether an untimely disclosure under Rule 26 is harmless: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Texas A&M Research Foundation v. Magna Transp., Inc.* 338 F.3d 394, 402 (5th Cir. 2003).

## ANALYSIS

Flexuspine moves to strike two paragraphs, one from each expert report, arguing they should be excluded under Rule 37(c)(1) because they set forth new opinions beyond the scope of the leave to amend. Flexuspine argues Globus's new disclosures on the eve of trial are untimely under Rule 26 and prejudicial to Flexuspine.

**I.    Amended Report of Mr. Jackson**

First, Flexuspine moves to strike ¶ 148 from the Amended Expert Report of Daniel L. Jackson (Mot. Ex. A). The opinions set forth in ¶ 148 include that "Globus's internal definition of net sales (on which it pays royalties in the ordinary course of business) is after making deductions for commissions and the cost of goods sold." Mot. Ex. A ¶ 148. Mr. Jackson further states "I also understand that Globus's calculation of net sales on which it pays royalties has been produced in this matter and is contained in the same file which Dr. Becker relies upon," citing to an underlying spreadsheet. *Id.* & n.219 (citing GLOBUSTX0000481046.xlsx ("the '1046 spreadsheet") and Amended Becker Report, Exhibit SLB-2-ACCPROD-SALES). Flexuspine's

objections relate both to the opinion disclosed in this paragraph, and the underlying '1046 spreadsheet.

Flexuspine argues Mr. Jackson's previous definition of net sales did not rely on any deductions for costs. Mot. at 6–7. Furthermore, Flexuspine objects that '1046 spreadsheet cited by Mr. Jackson "contained brand new 'deductions' for 'sales commissions' . . . to create a new drastically reduced 'net sales' figure for Globus to use as a royalty base at trial." Mot. at 4.

Globus responds that Mr. Jackson's opinions in ¶ 148 are in rebuttal to a new opinion regarding net sales, added to Dr. Becker's amended report, which it should have the opportunity to rebut. Resp. at 3–5. At the hearing, Globus further represented that the '1046 spreadsheet provided was an update to the top-line numbers included in a PDF document, GLOBUSTX0000480242 ("the '0242 PDF"), produced to Flexuspine on April 1, 2016. Resp. at 5. The Court addresses the parties' arguments in terms of the factors.

First, the importance of the evidence factor is neutral. The net sales disclosures at issue, and underlying spreadsheets, are important both to Flexuspine's damages case and Globus's case in rebuttal. The third factor, the possibility of curing prejudice by granting a continuance, is also neutral. A continuance is not a practical remedy for curing any particular prejudice here, nor does Flexuspine request one. The analysis therefore focuses on the two remaining factors—the prejudice to the opposing party of including the evidence and the explanation for the party's failure to disclose.

With respect to ¶ 148 of Mr. Jackson's amended report, Globus sufficiently explains the timing of its disclosure. In his amended report, Flexuspine's expert Dr. Becker opined that the definition of "net sales" in Globus's agreements with design team doctors, which include deductions for costs, are not relevant to a hypothetical negotiation. Doc. No. 189-1 ¶ 222. The

challenged net sales disclosure in Mr. Jackson's report is responsive to the amendments made in Dr. Becker's report with respect to the design team agreements. Mot. Ex. A ¶ 148. Moreover, these design team agreements, and the definition of net sales provided therein, have been a known part of the damages case, as evidenced by Dr. Becker's original report. *See* Doc. No. 111-17 ¶ 229. As recognized in the earlier reports, the design team agreements "use[] a definition of 'net sales' that include deductions for many costs, most notably manufacturing costs, sales commissions and royalties." *Id.* Because Mr. Jackson's net sales disclosure ties directly back to pre-existing disclosures and issues regarding net sales, the prejudice suffered by Flexuspine is substantially mitigated. Overall, therefore, Globus's need to present rebuttal to Dr. Becker's amendments outweighs the prejudice suffered from Flexuspine by Mr. Jackson's amendment.

Turning to the spreadsheets, Globus represented that its expert's testimony will be limited to the top-line numbers in the July 14, 2016 '1046 spreadsheet. The top-line numbers sufficiently relate back to the prior April 1, 2016 disclosure of the figures in the '0242 PDF document disclosed April 1, 2016. Accordingly, prejudice to Flexuspine can be remedied by limiting Globus's testimony to these top-line figures.

For these reasons, Flexuspine's motion is **DENIED** with respect to ¶ 148 from the Amended Report of Daniel L. Jackson. However, consistent with Globus's representations at the hearing, and as a remedy to the prejudice otherwise suffered by Flexuspine, Mr. Jackson's testimony will be limited to the top-line numbers from its July 14, 2016 spreadsheet (GLOBUSTX0000481046).

## II. Supplemental Report of Dr. Peloza

Next, Flexuspine moves to strike ¶ 14 from the Supplemental Report of Dr. Peloza (Mot. Ex. B). Flexuspine contends Dr. Peloza discloses "a new opinion about a potential design-around for Flexuspine's '853 Patent that would lengthen a part of the actuator of the [accused product] and adjust its tolerances to avoid infringement." Mot. at 8. Flexuspine submits there is no excuse for Dr. Peloza's untimely disclosure because he had all of the information underlying this opinion at the time of his original disclosure. *Id.* Globus responds that Dr. Peloza's non-infringing alternative opinion in ¶ 14 is responsive to the Court's summary judgment recommendation removing the '810 Patent from the case, and order striking Rise products as non-infringing alternatives. Resp. at 7.

First, the importance of the evidence weighs in favor of Globus. The availability of non-infringing alternatives is an important aspect of damages valuation. *See, e.g.*, *Ziilabs Inc., Ltd. v. Samsung Elecs. Co.*, Civil Action No. 2:14-cv-203, at *4 (E.D. Tex. Nov. 1, 2015). Second, however, the prejudice suffered by Flexuspine favors exclusion. The challenged portion of the amended report suggests a design-around of the accused product for the very first time on the eve of trial, affording Flexuspine little opportunity to meaningfully rebut this theory. Third, like with Mr. Jackson's disclosure at issue, a continuance is not a practical remedy for curing the prejudice suffered in this case, nor does Flexuspine request one. This factor is therefore neutral.

Finally, and importantly, Globus fails to adequately explain its failure to disclose this non-infringing alternative in a timely manner. Globus had the ability to disclose this design-around prior to the Court's rulings striking the Rise implants, or recommendation on summary judgment. In essence, its explanation for its delay is that it was successful in its own summary

judgment motion with respect to the '810 Patent. Globus's proffered explanation, therefore, fails to outweigh the prejudice suffered by Flexuspine for the new design-around disclosed.

Overall, Globus's attempt to justify its untimely disclosure of a new potential design-around to one of the patents in suit is insufficient to justify the prejudice suffered by Flexuspine. Accordingly, the Court **GRANTS** Flexuspine's request to strike ¶ 14 of the Supplemental Expert Report of Dr. John Peloza (Mot. Ex. B). This paragraph is hereby **STRICKEN**. Globus will be precluded from offering testimony regarding the design-around disclosed in this paragraph at trial.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Flexuspine's Motion (Doc. No. 178).

So ORDERED and SIGNED this 12th day of August, 2016.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE