# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **FLEXUSPINE, INC.**<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**GLOBUS MEDICAL, INC.,**<br><br>　　　　Defendant, | Civil Action No. 6:15-cv-00201 (JRG-KNM)<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANT'S AMENDED
## PRELIMINARY JURY INSTRUCTIONS

I. <u>General Preliminary Instructions</u>

Ladies and gentlemen, I have some preliminary instructions that I want to give you before we start with the opening statements from the lawyers and then get on to the evidence.

You've now been sworn as the jurors in this case, and as the jury, you are the sole judges of the facts, and you alone will decide and determine all of the factors in this case.

As the Judge, I will give you instructions on the law, decide questions of law that arise during the trial, handle matters of evidence and procedure. And I'm also responsible for maintaining the flow of the trial and maintaining the decorum of the courtroom.

At the end of the evidence, I'll give you detailed instructions about the law to apply in deciding this case, and I'll give you a list of questions that you are then to answer.

This list of questions is called the verdict form. Your answers to these questions will need to be unanimous, and your answers will constitute the verdict in this case.

II. <u>Introduction to Patents</u>

Now, I want to briefly tell you about this case and what it's about. This case involves a dispute regarding two United States patents. I know that you saw the patent video this morning, but I want to give you some instructions here and on the record about patents and how one is obtained.

Patents are either granted or denied by the United States Patent and Trademark Office, sometimes called the PTO. A valid United States patent gives the patentholder the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patentholder's permission.

A patent is a form of property called intellectual property. Like other forms of property, a patent can be bought or sold. A violation of the patentholder's rights is called infringement. The

patentholder may try to enforce a patent against persons it believes to be infringers by a lawsuit filed in federal court. That's what we have before us in this case.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government, which employs trained Examiners who review applications for patents. The application includes what is called a specification. The specification contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it.

The specification concludes with one or more numbered sentences. These numbered sentences are the patent claims. When a patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, an Examiner for the PTO reviews that application to determine whether or not the claims are patentable, that is to say, appropriate for patent protection, and whether or not the specification adequately describes the invention claimed.

In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews this type of information that is publicly available or submitted by the applicant. This type of information is called prior art.

The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time. Prior art is defined by law, and I will give you, at a later time, specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the art of the technology that existed before the claimed

invention was made. The claimed invention is presumed to have been made on the date a patent application was filed in the absence of evidence that it was made earlier.

A patent lists the prior art that the Examiner has considered. The items on this list are called the cited references.

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be patentable and thus allowed. This is called an office action.

If the Examiner rejects the claims, the applicant has an opportunity to respond to the Examiner, to try to persuade the Examiner to allow the claims. The applicant also has the chance to change the claims or to submit new claims.

This process between the applicant and the Examiner may go back and forth for some time until the Examiner is satisfied that the application meets the requirements for a valid patent, and in that case, the application issues as a United States patent. In the alternative, if the Examiner's ultimate conclusion is that the application should be rejected, then no United States patent is issued.

The papers generated during these communications back and forth between the Examiner and the applicant are called the prosecution history.

An issued patent is accorded a presumption of validity, based on the presumption that the Patent and Trademark Office acted correctly in issuing a patent. However, just because the PTO grants a patent does not necessarily mean that any invention claimed in the patent is, in fact, legally entitled to the protection of a patent. A person accused of infringement has the right to try to rebut the presumption of validity and argue here in federal court that a claimed invention in

the patent is not entitled to patent protection because it does not meet the requirements for a patent.

III.     Parties' Positions

To help you follow the evidence, I'll now give you a brief summary of the positions of the parties.

The plaintiff and patent owner in this case is Flexuspine, Inc., which the parties and I may often refer to simply as Flexuspine. The defendant in this case is Globus Medical, Inc., which the parties and I may often refer to simply as Globus.

The plaintiff, Flexuspine, contends that certain claims of the following patents have been infringed. This case concerns two United States patents, Patent No. 7,204,853 and Patent No. 7,316,714. These patents may be referred to in a group as the patents-in-suit. It is also common practice to refer to a patent by its last three digits, such as the '853 patent and the '714 patent.

The claims that Flexuspine contends have been infringed have been referred to as the asserted claims. Over the course of the case, you will learn more about which claims are asserted against Globus.

Flexuspine filed suit seeking money damages from Globus for allegedly directly infringing the patents-in-suit by making, using, selling, or offering for sale in the United States products that Flexuspine argues are covered by Claim 1 of the '853 Patent and Claims 1 and 2 of the '714 Patent. The products that are alleged to infringe are called Caliber, Caliber-L, and Altera. I may refer to these as the accused products.

Flexuspine argues that Globus has infringed the patents-in-suit. Flexuspine seeks damages in the form of a reasonable royalty to compensate it for the alleged infringement. Flexuspine also alleges that Globus's infringement is willful.

Globus denies that it is infringing any of the asserted claims of the patents-in-suit.

Globus further denies that Flexuspine is entitled to any damages.

Furthermore, Globus contends that the asserted claims are invalid on one or more grounds.

Invalidity is a defense to infringement. Therefore, even though the PTO has allowed the asserted claims, you, the jury, must decide whether those claims are invalid.

Your job is to decide whether or not any of the asserted claims have been infringed and whether or not any of the asserted claims of the patents-in-suit are invalid.

Now, my job in this case is to tell you what the law is, handle the rulings on evidence and procedure, and to oversee the conduct of the trial as effectively and efficiently as possible.

In determining the law, it is specifically my job to determine the meaning of any claim language from within the asserted patents that needs interpretation. I've already determined the meaning of the claim language in the patents-in-suit. Claim language is the language in those numbered paragraphs at the end of the patent. You must accept the meanings that I give you and use those meanings when you decide whether any particular claim has or has not been infringed and whether or not any claim is invalid.

You'll be given a document in a moment that reflects those meanings which I have determined.

For any claim term for which I have not provided you with a definition, you should apply the ordinary meaning that the term would have had to a person of ordinary skill in the art, sometimes called a person skilled in the relevant area of technology, at the time of the invention.

If I have provided you with a definition, however, you are to apply by definition to those terms throughout the case.

My interpretation of the language of the claims should not be taken as an indication to you that I have a personal opinion or any opinion at all regarding the issues such as infringement and invalidity. Those issues are yours and yours alone to decide as the jury in this case.

I'll provide you with more detailed instructions on the meaning of the claims before you retire to deliberate and reach your verdict.

In deciding the issues that are before you, you will be asked to consider specific legal rules, and I'll give you an overview of those rules now. And then later, I will give you much more detailed instructions.

The first issue that you're going to be asked to decide is whether Globus has infringed any of the asserted claims.

Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another. In general, Globus may infringe the asserted patents by making, using, selling, or offering for sale in the United States a product meeting all the requirements of a claim of the asserted patent. Flexuspine must prove infringement by a preponderance of the evidence.

Another issue that you'll be asked to decide is whether the asserted claims are invalid. A patent is presumed valid but may be found to be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious.

For a claim to be invalid because it is not new, Globus must show by clear and convincing evidence that all of the elements of a claim are sufficiently described in a single, previous printed publication or patent. We call these prior art. If a claim is not new, it is said to be anticipated.

Another way that a claim can be found to be invalid is that it may have been obvious. Even though every element of a claim is not shown or sufficiently described in a single piece of prior art, the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time.

You will need to consider a number of questions in deciding whether the inventions claimed in the asserted patents are obvious. I'll provide you with detailed instructions on these questions at the conclusion of the trial.

A patent may also be invalid if its description in the specification does not meet certain requirements. To be valid, a patent must meet the written description requirement. In order to meet this written description requirement, the description of the invention in the specification portion of the patent must be detailed enough to demonstrate that the applicant actually possessed the invention as broadly as claimed in the claims of the issued patent.

If you decide that any claim of the asserted patents has been infringed and is not invalid, that is, the presumption of validity has survived, then you will need to decide what amount of money damages are to be awarded to the Plaintiff, Flexuspine, as compensation to it for the infringement.

A damage award must be adequate to compensate Flexuspine for the infringement, but in no event may the damage award be less than what Flexuspine would have received had it been paid a reasonable royalty for the use of its patent.

I'll instruct you later on the meaning of a reasonable royalty.

The damages you are to award, if any, are to compensate Flexuspine and not to punish Globus. You may not include in your award any additional amount as a fine or penalty above what is necessary to fully compensate the patentholder for the infringement.

I'll give you more detailed instructions on the calculation of damages at the conclusion of the trial.

IV. Credibility of Witnesses

Now, ladies and gentleman, you're going to be hearing from a number of witnesses in this case, and I want you to keep an open mind while you're listening to the evidence and not decide any of the facts until you've heard all of the evidence.

While the witnesses are testifying, remember that you will be the ones who will have to decide the degree of credibility and believability to allocate to each of the witnesses.

So while the witnesses are testifying, you should be asking yourselves questions such as:

Does the witness impress you as being truthful?

Does he or she have a reason not to tell the truth?

Does he or she have any personal interest in the outcome of the case?

Does the witness seem to have a good memory?

Did he or she have an opportunity and ability to observe accurately the things they testified about?

Did the witness appear to understand the questions clearly and answer them directly?

And, of course, does the witness's testimony differ from the testimony of any other witness, and if it does, how does it differ?

These are some of the kinds of things that you should be thinking about while you're listening to each and every witness.

V. Juror Notebooks

In a moment, each of you are going to be given a juror notebook. In that notebook are blank pages and a legal pad that you can use to take notes on. It's up to each of the members of

the jury to decide whether or not you want to take notes during the trial, and if you do, how detailed you want those notes to be.

But, remember, those notes are for your own personal use. You have to rely on your memory of the evidence, which is why you should pay close attention to the testimony of each and every witness.

You should not abandon your own recollection because somebody else's notes indicate something different. Your notes are to refresh your recollection, and that's the only reason that you should be keeping them.

Whenever you leave each day, you should leave those juror notebooks on the table in the jury room. They should either be with you at all times in the courtroom or on the table in the jury room and not anywhere else.

VI.     Burden of Proof

There are two standards of proof that you'll be asked to apply to the evidence depending on the issue that you'll be deciding. As the jury, you may apply a burden of proof known as a preponderance of the evidence, as well as a different burden of proof known as clear and convincing evidence.

On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact to be proven has to be shown to be more likely true than not true.

On other issues in this case, however, you will be applying a higher burden of proof. And in those situations, you'll be deciding whether a fact has been proven by clear and convincing evidence; that is, in those matters, the question will be whether you've been left with a firm belief or conviction the fact has been proven.

These standards are different from what you may have heard about in criminal cases where the burden of proof is beyond a reasonable doubt. That does not apply in this case. That's a very high standard used only in criminal cases when deciding whether a person should be imprisoned or subjected to some other penalty.

After all the evidence has been presented, I will give you the final instructions on the case.

VII.   Expert Witnesses

Now, I also want to talk with you briefly about expert witnesses. When knowledge of a technical subject may be helpful to you, the jury, a person who has special training or experience in that particular field—we may refer to them as an expert witness—is permitted to testify to you about his or her opinions on technical matters.

However, you're not required to accept an expert's opinions at all. It's up to you to decide whether you believe an expert witness, or any witness for that matter, is correct or incorrect or whether or not you want to believe what they say.

I anticipate that there will be expert witnesses testifying in support of each side in this case, but it will be up to you to listen to their qualifications, and when they give an opinion and explain the basis for it, you will have to evaluate what they say and whether you believe it, and to what degree, if any, that you want to give it weight.

VIII.  Depositions

During the trial, I also anticipate that testimony is going to be presented to you through what we call depositions. In trials such as this, it's tough to get every witness here physically at the same time. So lawyers from each side, prior to the trial, take the depositions of the witnesses.

In a deposition, they have a court reporter present; the witness is sworn and is under oath, just as if he or she are present in the courtroom; and the parties, through their lawyers, ask them questions; and it's recorded.

Portions of those video recordings of these questions and answers may be played back to you as part of this trial so that you can see the witnesses and hear their testimony.

That deposition testimony is entitled to the same consideration insofar as possible and is to be judged as to the credibility, weight, and otherwise considered by you, the jury, in the same way as if the witness had been present physically and had given their testimony from the witness stand in open court.

IX. <u>Outline of the Trial</u>

We're going to have the opening statements in just a few minutes. But before we do that, I want to give you a brief roadmap of how the trial is going to be structured before we get into those opening statements from the attorneys.

After the opening statements, the Plaintiff, Flexuspine will present its evidence in support of its contentions that some of the claims of the patents-in-suit have been and continue to be infringed by Globus.

After Flexuspine has put on its evidence and rested, Globus will present its evidence that the asserted claims of the patents-in-suit are invalid. In addition to presenting its evidence on invalidity, Globus will put on on evidence responding to Flexuspine's proof regarding infringement and damages.

When Globus has presented all of its evidence, it will rest. And after it rests, Flexuspine may then put on additional evidence responding to Globus's evidence that the claims of the asserted patents are invalid.

This is referred to as the rebuttal case or the rebuttal evidence.

Then at the close of rebuttal evidence, all the evidence will have been presented, and at that time, I will give you instructions on the law that applies in this case. Those final instructions from the Court to the jury are called the Court's final charge to the jury.

After I have given you my final charge, then the attorneys in the case will present their closing arguments.

X. <u>Conduct of the Jury</u>

After the closing arguments of the attorneys, then I will direct that you are to retire to the jury room and then and only for the first time then discuss the case among yourselves in an attempt to reach a verdict and answer those questions that will be supplied to you in the verdict form.

I also repeat my instructions to you that you're not to discuss the case among yourselves, except and only when I've directed you to retire and deliberate on your verdict after all the evidence has been presented. And at no time are you to discuss the case with anyone until the time that you retire to deliberate.

Please be mindful that the attorneys and the representatives of the clients and the witnesses are not going to engage you in conversation or be overly friendly during this process.

That's so that they can comply with my instructions. And you're not to take that as a snub or rudeness or anything of that manner. That's simply what I require of them.

Now, ladies and gentlemen, with those instructions, we're now going to hear opening statements from both parties in this case.

DATED: August 12, 2016    Respectfully submitted,

                    <u>/s/John P. Lahad</u>
                    Arun S. Subramanian (Lead)
                    NY State Bar No.: 4611869

Jacob W. Buchdahl (*Pro Hac Vice*)
NY State Bar No.: 2903383
Mark H. Hatch-Miller (*Pro Hac Vice*)
NY State Bar No.: 4981635
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Telephone: (212) 336-8330
Fascimile: (212) 336-8340
asubramanian@susmangodfrey.com
jbuchdahl@susmangodfrey.com
mhatch-miller@susmangodfrey.com


Richard W. Hess
TX State Bar No. 24046070
John P. Lahad
TX State Bar No. 24068095
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 653-7859
Fascimile: (713) 654-6666
rhess@susmangodfrey.com
jlahad@susmangodfrey.com

S. Calvin Capshaw
State Bar No. 03783900
Capshaw DeRieux LLP
114 E. Commerce Ave.
Gladewater, Texas 75647
Telephone: (903) 845-5770
Email: ccapshaw@capshawlaw.com


*Attorneys for Defendant*
 *Globus Medical, Inc*.

## **CERTIFICATE OF SERVICE**

I certify that on August 12, 2016, a copy of the foregoing document was served on the parties to this action by electronically filing true and correct copies with the Clerk of the Court using the ECM/ECF system which automatically sent notification by e-mail of such filing to all counsel of record.

         */s/ John P. Lahad*
         John P. Lahad